Brian Corrigan v. Covidien LP Ann Saucer for Appellant Brian Corrigan v. Sherry Bennett May I reserve 3 minutes for rebuttal? You may. The Appellant, Mr. Corrigan, was egregiously injured due to a defective stapler manufactured by the Covidien Appellees. If I may, I'd like to get to three primary topics before this Honorable Court today. First, genuine issues of material fact precluded summary judgment on the plaintiff's failure to warn claims. The second and third areas I'd like to highlight gets to the interesting strategy of the Appellees of not asking this Court to say that the District Court got it right in all of its rulings. Instead, the Appellees are asking this Honorable Court to off-road from what the District Court decided in several respects. And so that gets to the second issue I'd like to address, preemption. And third is this Ohio law issue, which also gets to waiver. But first, I'd like to talk about why there are genuine issues of material fact. This gets into a ferocious debate about what the surgeon, Dr. Rose, said in his deposition testimony. This Honorable Court has read very different versions of what Dr. Rose said. Big picture what's happening is that Dr. Rose was contacted by Covidien at the beginning of his deposition. He was asked questions, very narrow questions, and he gave answers. Later, those answers were flushed out in plaintiff's favor. And his clarifying testimony in plaintiff's favor was ignored in the District Court's order or was discounted in the District Court order and ignored in the Appellee's brief. Another thing that is happening in the briefing is the Appellee's are citing answers where Dr. Rose said, I don't know, I don't recall, as if those answers were in Covidien's favor. So an overview of his testimony, Dr. Rose said that he relied upon the manufacturer's, Covidien's, detailed representatives to give him accurate information. He expected that they would monitor the product, that he would be advised of adverse trends. He said that he reviewed the scientific literature. He did not directly look at adverse events. Can I just understand your claim? I thought the claim on the failure to warrant, there's the MAUD, is it called? Yes, Your Honor. And then there's the, what's the other one? ASR, alternative. There's those two. And I thought the claim was that they were over-reporting on the ASR and not putting things in the MAUD that should have been put there. Correct, Your Honor, that's part of it, but that's not the entirety of what our claim is. That is, that piece of evidence is an FDA letter. It relates to an FDA letter. The timing of it is very important evidence for this case, because the FDA issued that dear doctor letter a couple of weeks after, I think approximately three weeks after Mr. Corrigan's horrifically botched surgery. And what that FDA letter gets to is the FDA says, dear doctors, we are concerned about the instances of malfunction of these devices. And, in fact, the FDA listed hundreds of deaths, tens of thousands of incidents. What was part of what the FDA said was we're looking to reclassify it from class one. And the FDA discontinued the alternate. I don't want to cut you off, but I guess I do. On the one version, you tell me if you're making this claim. There was a failure to warn because things that should have been reported in the MAUD were reported only on the ARS. Yes or no? Yes. It's one of the claims that we're making. Okay. What is the other claim you're making about failure to warn? The claims you're making about the failure to warn is that, as a device manufacturer, under Massachusetts law, it's very clear that Corrigan had a duty to warn in ways beyond just the MAUD reporting database. So they had a duty to have warnings that were not just about that there is a risk, but they had to identify the gravity of the risk. They also, under the law, had to warn in a manner that was reasonable. And so what we're saying is that they should have... Let me put, if they had done all the reporting that was, you say, obliged to have been in MAUD rather than in the ARS, because you do make that argument, right, that they did put things in ARS that should have been in MAUD? They should have put things in MAUD, and they put them in the alternative, which was CEQA. Yes, we say that. Okay. Had they done all of that, would there have been still a failure to warn? Had they done all of that, yes, I think we're arguing that there would still be a failure to warn, but had they done that, this would not have occurred. That's that second piece that is, I think, the problematic piece with respect to causation. Unless there's some indication that the doctor here would have been warned by it being in MAUD, and I thought the district court's determination was that's where the pleadings fell short. So let me break it up. Number one, I'd like to talk about what the doctor actually said about his review and his information that he received about the adverse event reports. But then number two, I want to talk about the other ways that the doctor should have been warned beyond merely reporting in MAUD. So with regard to the FDA, there's a distinction. I guess I'm just not, if everything was in MAUD, the allegation was he then would have been warned. That's one of the, okay, that is one of our failure to warn arguments, and this is why I say that based on the record. That's one of the things that we're saying. And we're saying that because he said in the record at page 660, I read articles about adverse reports, events of staples. There's a number of references that talks about the adverse events related to resections. And then he later says on the next page, I don't routinely query the FDA to see what is or isn't reporting adverse events, but I would want to be aware of them. And then he also says on page 661 in the appendix that he could have reviewed adverse event reports, he just couldn't remember at the time. So one of the things that we are saying is that there's a genuine issue of material fact that had instead of Covidian, and we list in the complaint the statistics on how many things they reported secretly instead of to MAUD. We're arguing that based on the testimony of Dr. Rose, there's a genuine issue of material fact on the issue of whether had they reported these adverse events to MAUD instead of in the secret database that he would have made a different decision. Okay, I understand that argument. You're either right or wrong about whether the statements provide a basis for that claim or don't. And I totally understand where we are on that. If the district court was right in concluding that the record doesn't provide sufficient support for showing that had it been in MAUD, that would have caused the doctor to act differently. You now seem to be saying wholly apart from MAUD, forget about MAUD and ARS. They had an independent duty to warn through a different channel. Is that right? The detailed representative, he, okay. So that was a separate claim that it was a failure to warn through that detailed representative? I'm sorry, Your Honor. It's not pled as a separate claim. Well, that's what I'm having trouble figuring out whether that's even in the case then. Well, it's part of, it's a genuine issue of material fact, and it's something we. What's the genuine, with respect to what? This is something that we have argued consistently in opposition to the summary judgment motion. Whether the manner in which the covidian warned was reasonable. And one of the parts of the deposition testimony that consistently we've talked about and highlighted is him saying the word rely, that he relied on information from the detailed. There's a difference between if the details had given the information, that would obviously undermine the failure to warn claim because he would have been warned. That's a distinct point from making a separate argument that even if they had put everything in MAUD, they had an independent obligation to have warnings through the details. Were you making that separate claim? Because that's what runs into the preemption issue. Okay. Oh, on the preemption issue. No, don't talk about the preemption. I'm sorry I raised it. But do you see what I'm saying? I understand why there was evidence and discussion about what the details said. If the details were telling him, hey, hey, look, look, look, then he would have been warned. So that would be quite problematic for your failure to warn claim because he would have been warned. But he was not warned.  But did you make a separate argument that they had a duty to warn through that route apart from the duty you're saying they had to warn through MAUD? Well, we didn't plead that, but we have pointed to that deposition testimony. But you need a claim. You can't win summary judgment on a claim that wasn't pled. I'm sorry, Your Honor. Let me back up. We did not plead the details of his deposition testimony because the pleading, the complaint was filed before we deposed him. I'm not asking about the details of the deposition. I'm talking about the other actors, the representatives who came and met with him, right? So the Covidian detail route, that's part of Covidian. So we said that Covidian, they did not warn. I understand that, but did you say that that was a breach of the duty to warn by not having them independently make warnings? That was part of, okay, once we had Dr. Rose's deposition testimony, that was part of our argument. It's always been part of our argument. Did you amend the complaint to add that claim? We were not allowed to amend the complaint. We filed two, okay, so we filed, I believe the deposition was taken after the deadline for amending the complaint, and we tried to amend the complaint twice. And then on the, and then we did. Are you appealing the failure to allow you to amend the complaint to add a claim that the failure to have the detail reps do the warning was itself a breach of the duty to warn? We don't, we don't word it that way, but we certainly have, we don't distinguish the, let me back up, we don't distinguish the breach of warning claim in this case as under Massachusetts law or otherwise, as requiring a dissection of warning through MAUD or warning through the detail representative. The issue is that under the law, they had to warn in a reasonable manner and to a reasonable degree. So we have never seen it as requiring pleadings in did you, warning the detail rep versus warning the FDA. It's they have a duty to warn in a reasonable manner. And just last question, what do you do, let's say under Massachusetts law, warning through MAUD would be reasonable, okay? Warning through MAUD alone would be reasonable, a position that I don't think you dispute. Do we dispute that warning through MAUD alone would be reasonable? We do not dispute that. Okay, now we have a case in which we have a finding that had that reasonable means of warning been utilized, it would have made no difference. It would have made a difference. I understand if you lose on this point about causation. If you were to lose on that point about causation, what then is the relevance of the fact that detail reps didn't provide the warning under Massachusetts law? Because do they have an obligation to use a means that he would have considered rather than a means that it happened he didn't consider? I don't know anything in Massachusetts law that says that. Do you see what I'm asking? I do. The point about the detail rep, though, it undercuts the entire causation argument. And the part about MAUD goes to the timing of part of the timing of the FDA letter. All of this shows it's evidence of a timeline of they covered up the adverse events and they were successful in covering up the adverse events. I see. Thank you. At this time, would counsel for the appellees please introduce themselves on the record to begin? May it please the Court, my name is Madeline Clark, and I represent the appellees in this case. The Court is exactly right to focus on causation because this day was over the day Mr. Corrigan's surgeon, Dr. Rose, testified. Plaintiff's theory of the case was that if Covidian had reported all adverse events related to its stapler to the FDA's public database, Dr. Rose would not have used Covidian's stapler and Mr. Corrigan would not have been injured. But Dr. Rose testified that he did not look at the FDA's database before Mr. Corrigan's surgery, and in fact, as of his deposition, had never looked at the FDA's adverse event data. Plaintiffs thus could not show any causal connection between Covidian's adverse event reporting and Mr. Corrigan's injury as the District Court correctly found. Part of the deposition that you just quoted seems to be that at least they're arguing that what you're saying is not so definitive. Do you disagree with what you presented to us as part of the doctor's deposition testimony? I disagree that what he said was not definitive. He said that he did not look at the adverse event data before Mr. Corrigan's surgery. I believe he said he wasn't sure he had ever been on the FDA's website, at least as to adverse event reporting, in the five years since the data had become public in 2019. I don't think he had ever looked at it. And what about the fact that if it was public and in MAUD, it would have made its way into the scientific literature, which he did review? I think even as to that claim, there is still a causation problem, because even if... Why? Oh, yeah, sorry. Let me... So that argument that if it had been in MAUD, it would have made its way into the scientific literature, I think there's still a causation argument because of how speculative that argument is. It requires the assumption that the adverse event data would have gone into MAUD, and then therefore it would have come into the scientific literature, and then the doctor would have read that. And I also think that depends on the creation of a duty to warn through MAUD, which I don't think is in either Ohio or Massachusetts law. I would like to touch for a moment on... What do you mean by that last point, that there's no duty to warn through MAUD under Massachusetts law? In other words, it's enough to warn the regulator secretly under Massachusetts law? I do not think that there is a duty under Massachusetts law at all to submit adverse event reports to the FDA. The duty under Massachusetts law is to warn the physician. But it just seems like a somewhat odd position to take because the physician was not warned, was he? Well, our position is that the physician was sufficiently warned of a leak, but to the extent that... Through what means? He was warned that there would be a risk of an anastomatic leak from the use of the stapler. I see, but you're saying that the frequency of leaks themselves, he doesn't need to be told about that? Our position is not necessarily. The plaintiffs would have to show that there was a misperception. They would have to show that the actual risk of leak from the stapler was such that warning that there was a risk of a leak alone is not sufficient to communicate the gravity of the risk. There is no evidence in this case that Dr. Rose was unaware of the gravity of a risk of the leak. The only evidence in this case... Didn't he testify that he wasn't aware of the gravity of the leak? He testified that... Something like 3%, whereas in reality he later found out that it was greater? There is no evidence in the case that the leak was in fact greater than what Dr. Rose thought it was. There is no evidence that the leak was 12 to 15% or anything greater than the 3 to 5% that Dr. Rose thought it was. But ultimately that doesn't matter because even if the risk of the leak was greater than what Dr. Rose thought it was, he testified that he did not read the warning that Kavitian provided to him in the instructions. So even if Kavitian had put in the instructions in big bold letters the risk of the leak... Yes, I'm saying the gravity isn't anywhere in the record. And I'm also saying that even if the instructions had gone to the gravity... I thought the gravity in the record was the fact of the reporting to the other federal database. I thought they were saying that that showed that there was a greater gravity of risk that wasn't reported in the mod. They do argue that the adverse events shows a greater gravity of risk. The FDA says that the adverse event reporting should not be used to calculate a risk of failure because that's the fact that there have been some adverse events. It doesn't give you the denominator of the total number of uses of the stapler. So it wouldn't actually allow you to calculate a gravity of the risk. It's also not the case that the fact that there was a stapler-related adverse event means that the product was at fault. There could be an adverse event report because of user error from the surgeon. But again, even putting all of that aside, Dr. Rose testified that he did not read the warning in the instructions before Mr. Corrigan's surgery. So your basic argument is that under Massachusetts law, that's game over right there because even if the risk was unbelievably high, the only obligation was to put that in the warning. And since he doesn't read the warnings, it would be irrelevant. Yes. Okay. And then the fallback argument is even assuming that there was a duty to warn beyond the warning that COVID in itself supplies. To the extent there was such a duty, that would be maud, and he didn't look at that either. And then the only wrinkle is that, well, but maud might have gotten into the bloodstream of scientific journals and there was testimony that he looked at that, but then you say that's too speculative also given the chain of inferences. Yes. The district court's ruling is based only on the lack of causation as to maud. It didn't hold that we don't even have to look at maud because under Mass. law, all that matters is the warning COVID provided, right? I don't read the district court to have two holdings. I read it to the maud holding and then say a traditional failure to warn claim based on the instructions also fails as well. And the district court also determined that because Dr. Rose was already sufficiently aware of the risk at issue, that there was no causation for that reason too, and that goes to both the maud theory and an instruction-based theory. And then as to whether there was a claim being brought that the detail reps had an independent, was an independent route by which a warning should have been made to him, do you understand that to be in the case or not in the case? I understand that to not be in the case. I didn't see it in the first, in the operative complaint or in the proposed amended complaints. I didn't see, I do not think it was in the summary judgment briefing, but I'm not confident on that. I didn't really understand that theory to be advanced until the reply brief before this court. Can I ask you, this is on a slightly different topic, but since you mentioned the very low failure rate, known failure rate, why as to the motion to dismiss on the manufacturing defect count, why wouldn't the fact of failure be enough to create a plausible claim and entitle them to some discovery? Because the fact that a product failed does not, the allegation that a product failed does not plead anything about why the product failed. And for a manufacturing claim specifically, the requirement is that the product had deviated from the design in some way, and that requires an identification of something that went wrong in the manufacturing process or with the product. So what plaintiffs could have alleged is... But aren't there a number of cases in Massachusetts that say that all of that can be inferred, at least at the plausibility stage, just based on the failure of these products that have such a low failure rate? I think that to the extent that's in Massachusetts law, that would be a Rice-Ipsa type of theory. That was not advanced by the plaintiffs in this case. If you look at the operative complaint, in some of the early paragraphs, they allege how important it is that the surgeon put the product together correctly, how important it is that the surgeon matched the stapler handle with the anvil correctly. It's also the case that sometimes a staple would be the things with the patient's anatomy, and given that there is all of these other things that could go wrong, the plaintiffs need to plead the specific element of a manufacturing defect. But why is it, now that I'm just hearing you say it, what does it mean to say they didn't plead the Rice-Ipsa theory? I mean, isn't it, they had a theory of manufacturing defect, a claim of manufacturing defect. They have facts support it. If a Rice-Ipsa theory would support that claim, what does it mean to say they didn't? I'm saying they didn't have facts to support a Rice-Ipsa theory. And why not? Because I think just to plead a Rice-Ipsa theory in this case, they would have needed to plead that it was the type of defect that did not, they would have needed to plead that it would be the type of defect that would not occur without surgeon error. They would need to plead that the product was in the exclusive control of the company until use. Did they plead that it had a low failure rate? No, I don't think they pleaded that it had a low failure rate. If the court has no further questions, I'll ask that the court affirm. Thank you, counsel. At this time, counsel, for the appellant, please reintroduce themselves on the record. They have a three-minute rebuttal. Ann Saucer for appellants, Brian Corrigan, and Sherry Vimit. If I may start, opposing counsel was asked whether it is part of the case that Covidian failed to warn through routes outside of MAUD reporting and said she did not believe that that was raised below in the summary judgment record. It was, in fact, and I have the record citations for this honorable court. I think she said it wasn't raised in the operative complaint as a claim and that she wasn't familiar, wasn't sure or confident about what the summary judgment briefing showed. I am confident what the summary judgment briefing showed. Are you confident that it was actually pled in the operative complaint? Okay, so what I'm confident is pled in the operative complaint is, okay, so in the operative complaint on pages 78 and 79 in what it says about failure to warn, it is a pleading of failure to warn that is not limited to the MAUD database. In other words, this is a failure to warn pleading. This is in the first amended complaint. It's count to failure to warn. The failure to warn claim is not limited to reporting through the MAUD database. It is a failure to warn claim under Massachusetts law. And when we responded to the motion for summary judgment in the record at the appendix at least at pages 479 and in the record in the appendix also on pages 498 when we get into disputed facts, we briefed this at length and we quoted the Dr. Rose's testimony. And it's my understanding that the deadline, I think the deadline for mending the complaint had already run by the time he was deposed. But regardless, we pled a general failure to warn under Massachusetts law claim. Did you plead that even though reporting through MAUD would be a reasonable means of providing a warning, they separately had a duty to do it through detail representatives? No, we did not plead that specifically. And did you argue that in the summary judgment? Yes, we argued. They had an independent duty to do it through the detail reps even if doing it through MAUD would have been reasonable? We argued that they, okay, we argued whether that information would have reached them directly via defendant's sales representatives or indirectly via FDA's revelation of a gap in knowledge caused by manipulation of the reporting system, he would have heeded such warnings. So, yes, we said that he would have heeded the warnings. It was part of the causation. It was part of our argument. We briefed it and we quoted it that there were other means for Dr. Rose to have been warned and not was required as a matter of Massachusetts law requiring both manner and gravity to be, manner to be reasonable and gravity of the warning to be given. Thank you. Thank you, counsel.